## MILAM *v.* THE STATE.

1. When the solicitor-general, in arguing a criminal case to the jury, contended for the existence of certain facts to which no witness had sworn, it was not ground for a new trial that the judge allowed him to proceed, over objection of defendant's counsel, after the solicitor had expressly disclaimed making such statement as the testimony of any witness, but stated that it was simply his conclusion from the evidence.

2. Where, during the concluding argument of the solicitor-general for the State, there is a dispute between him and defendant's counsel as to certain testimony, it is not error for the judge to allow each one of the counsel to give his version of the evidence, the court thereupon instructing the jury that they must determine as to which one of the attorneys is right. The absence from court of the stenographer at the time was sufficient reason for the court's not granting a motion of defendant's counsel to have the stenographic report on the subject read to the jury.

3. It was not error requiring a new trial to admit testimony of sayings of the deceased, a few minutes after he was shot, to the effect that he believed he was killed, and that defendant shot him. Even if such sayings were not part of the res gestæ, they worked no harm to the defendant in this case,

since it was not on the trial a controverted issue of fact as to whether or not the defendant did the killing.

4. There was no error in the court's permitting State's counsel, after the conclusion of defendant's evidence, to prove incriminating statements of the defendant by a witness who had previously been examined in chief for the State. Allowing either party in a criminal case to reopen his case by the introduction of further testimony is within the discretion of the trial judge, and there was no abuse of such discretion in this instance.

5. The newly discovered evidence insisted on as a ground for a new trial, being cumulative in its nature and relating to a matter about which a number of uncontradicted witnesses testified for the defendant, constitutes no valid ground for setting aside the verdict.

6. In the light of the entire charge of the court, which fairly and fully covered the issues involved, there was no error in any of the portions thereof complained of by the plaintiff in error, authorizing a new trial. The verdict of voluntary manslaughter was fully sustained by the evidence.

Argued June 5, — Decided July 18, 1899.

Indictment for murder. Before Judge Candler. Fulton superior court. March term, 1899.

*Arnold & Arnold* and *Harvey Hill*, for plaintiff in error.
*C. D. Hill,* solicitor-general, contra.

LEWIS, J.    John A. Milam was placed on trial in Fulton superior court, under an indictment charging him with the murder of Henry Perry. The jury returned a verdict against him of voluntary manslaughter, and he excepts to the judgment of the court overruling his motion for a new trial.

1. It appeared on the trial that the defendant killed the deceased at the house of a lewd woman by the name of Florence Livingston, with whom, the evidence indicated, both men had been illicitly intimate for some time before the homicide. Engaged in the service of this woman was Ella Cooper, who, directly after the killing, made a statement to the effect that Florence Livingston had committed the homicide, thus corroborating a statement that had been made by Florence Livingston herself. On the trial of the case, however, it was conceded that this statement was false, and there was really no dispute about the fact that the defendant did the killing. Ella Cooper was placed on the stand by the State, and her testimony was directly in conflict with the previous statement made by her as above mentioned. In the motion for a new trial complaint is

made that the solicitor-general, in commenting on the testimony of the witness Ella Cooper, stated that Ella Cooper had not said to the officer on the evening of the killing that Florence Livingston did the killing merely because she heard Florence Livingston tell the officer this, but that she told the officer that Florence Livingston did the killing because she was told to do so and did as she was instructed. To this argument of the solicitor defendant's counsel objected, and asked that the court stop the argument and correct the statement, as there was no evidence authorizing it; but the court refused to do this, and allowed the solicitor to proceed. In explanation of this ground in the motion, the judge states that the solicitor insisted that he had a right to argue, from the circumstances of the case, that Ella Cooper was told to say what she did; that he distinctly stated to the jury that there was no such evidence, and that he only argued that this was the fact from the circumstances surrounding the witness; and that he (the judge) then told defendant's counsel that the solicitor specifically disclaimed the statement as evidence, and simply argued it to the jury as a deduction from the evidence. In the light of this modification by the court of the ground in the motion, there is left absolutely no merit in the complaint made. No certain rule could possibly be established, fixing the limit to which counsel in the discussion of facts in issue before a jury should go in drawing their deductions from the evidence. This is a matter of argument in which counsel should necessarily be allowed broad latitude, and whether the inferences drawn from the circumstances and facts proved in the case are legitimate or logical is a question for the jury to pass upon, and not for the court to undertake to control.

2. Complaint is made in the motion for a new trial, that the solicitor-general stated to the jury in his concluding argument that Milam had no more right to the woman, Florence Livingston, than the deceased, Perry, and that when Perry and the woman were having trouble in the hall, the defendant came out of the room and got in the trouble, and stated to Perry, "What are you doing, beating up this woman that I have had for years?" Defendant's counsel objected to this

statement and asked that it be corrected, contending that no such evidence was introduced, and offering to read to the court from the stenographer's report what was the evidence on the point at issue. In explanation of this ground in the motion the court states, in substance, that when appealed to he did not remember what the testimony was; that the stenographer of the court was absent at the time; and he simply stated to the jury that they would have to remember as to the evidence and as to which one of the gentlemen was right; and he allowed each one of the counsel to state his recollection of the testimony. We are at a loss to see what other proper course the court could have pursued under the circumstances. Even when there is no failure to recollect on the part of the judge as to the facts about which counsel are at issue, we think it would always be the safer course for the judge not to undertake in the presence of the jury to decide between them, but to allow each to give his version of the matter and leave the issue with the jury where it properly belongs.

3. Error is alleged in the court's allowing the State to prove a declaration made by the deceased after he was shot, to the effect that the defendant shot him, and he believed he was dead. This declaration was made in response to a question. asked the deceased by the witness, as to who shot him, and seems to have occurred after the deceased left the house where he was shot and had met and passed the witness. The court, in explanation of this ground in the motion, states that the defendant was at the door of the house at the time of this conversation, and the woman was pulling him back, and the physician testified that a man shot as was Perry could have only lived a few minutes. It does not definitely appear from the testimony how long an interval had elapsed between the shooting and this declaration, but we are inclined to think that there. was sufficient evidence from which it could be inferred that the time was short enough to free the sayings of the deceased. from any suspicion of afterthought. There was nothing, however, in the statement of the deceased admitted in evidence which was controverted on the trial. The only material part of it which had any effect whatever upon the defendant was

the statement that he inflicted the wound from which Perry afterwards died. This fact was not controverted, but was really admitted by the defendant on the trial. Certainly, then, no harm could have resulted to him from admitting testimony the truth of which he conceded.

4. Another alleged error in the motion for a new trial is, that the solicitor was permitted, at the conclusion of defendant's evidence, to place upon the stand a witness he had examined in chief, and to prove by him certain statements of an incriminating character that the defendant had made. It is claimed that this testimony in rebuttal was highly prejudicial to the defendant, and that if the defendant had made any confession or inculpatory statement it was a matter for the State to put in, in making out its case in chief. The defendant in his statement admitted doing the killing, and claimed justification because of a dangerous attack with an iron poker in the hands of the deceased, which he alleged was made upon him at the time. The statement of the defendant introduced in conclusion was to the effect that he told witness that he did not see the shooting and did not know anything about it; and in the conversation the defendant made no mention of a poker to the witness. This evidence seems really to have been in rebuttal of the defendant's statement; but whether so or not, it has been repeatedly ruled by this court that it is largely within the discretion of the trial judge, at any stage of the proceedings, to permit the case to be reopened and new evidence to be submitted by either party. This court will never reverse the judgment of the court below in the exercise of such discretion, unless it should appear that from abuse thereof the plaintiff in error has lost some substantial right which, if allowed, might have affected the verdict rendered. There was certainly no such abuse of discretion in this case. See *Powell* v. *State*, 101 *Ga.* 10 (3); *Hunley* v. *State*, 104 *Ga.* 755.

5. The newly discovered evidence claimed as a ground for a new trial in this case related to declarations of a threatening character against the defendant, made by Perry prior to his death. A number of witnesses were introduced in behalf of the defendant on the trial, who testified to threats of this kind

that Perry had repeatedly made against Milam, and we fail to find in the record any testimony tending to contradict or impeach these witnesses. The newly discovered evidence, therefore, was purely of a cumulative character, and we fail to see, in the light of the record before us, how it could possibly affect the verdict of an impartial jury in this case. *Hill* v. *State*, 64 *Ga*. 454 (3).

6. There are various other grounds in the motion for a new trial, complaining of error in certain portions of the charge of the court to the jury. After a careful review of these exceptions in connection with the entire charge of the court, we fail to find sufficient merit in any of them to require discussion. The charge was full and fair, and completely covered the issues involved. There was not only sufficient evidence to sustain the verdict of voluntary manslaughter, but we think the very decided weight of the sworn testimony indicated that the defendant was at least guilty of that offense. The evidence clearly indicated that these two men had been unlawfully intimate with the woman Florence Livingston, and they were evidently jealous of each other. The character of the deceased when drinking was that of a boisterous, quarrelsome person, and when in that state he would frequently make threats against the accused in his absence. On the day of the killing, while defendant was at the house of the woman, the deceased made his appearance, attracted her out into the hall or into another room from where she and defendant were, and commenced abusing and perhaps assaulting her. Defendant appeared upon the scene and interposed in behalf of the woman. An altercation took place between him and the deceased, when defendant struck deceased with his pistol. A fight then ensued, which resulted in the death of Perry. There was some evidence in behalf of the defendant that during the contest deceased was trying to use an iron poker on defendant; but we fail to find in the record the testimony of a single witness who swore positively that Perry was in the act of using this instrument when the defendant fired the fatal shot. The evidence for the State tended to establish the fact that the killing was at a time when Perry was unarmed and the defendant's life was in no danger. We conclude, therefore,

that the verdict of voluntary manslaughter was amply sus-
tained by the evidence, and that the court was right in over-
ruling the motion for a new trial.

> Judgment affirmed.    All the Justices concurring.