### 3754.   CASSIDY *v.* THE STATE.

1. The evidence authorizes the conviction.
2. It is a violation of the statute of this State for a person to keep intoxicating liquors on hand at his place of business, "whether the package, bottle, or barrel is open or unopened."
3. The written request to charge on the subject of mere transient possession of liquors at one's place of business was properly refused, because there was no evidence on which to base it.
4. In a prosecution for keeping intoxicating liquor on hand at one's place of business, the State may show, and the jury may consider, the fact, that the accused has registered as a retail liquor dealer and paid the United States government tax therefor, even though the act approved August 21, 1911 (Acts 1911, p. 180), is not applicable, and though a prima facie case of guilt is not made out by the introduction of this evidence.
5. One who has paid the tax and obtained a license under what is known as the "near-beer act" (Acts 1908, p. 1112) is not entitled thereby to keep on hand at his place of business any alcoholic, spirituous, malt, or intoxicating liquors. The only liquors he is authorized to keep on hand are such as, if drunk to excess, will not produce intoxication.
                    DECIDED NOVEMBER 20, 1911.

Accusation of misdemeanor; from city court of Macon—Judge Hodges. August 19, 1911.

*John P. Ross,* for plaintiff in error.

*Walter J. Grace, solicitor-general,* contra.

POWELL, J. The defendant was indicted on two counts. The first charged the sale of intoxicating liquor, and the second the keeping on hand of intoxicating liquor at his place of business. He was found guilty upon the second count only.

1.   The State showed that there had come by railway, addressed to the accused, a number of shipments marked "whisky," and so designated on the bills of lading; that these articles thus marked and consigned had been delivered to draymen, under written orders of the accused; and that the draymen had taken these packages and had delivered them within the place of business of the

accused. The accused's place of business was raided some time later, but no liquor was found therein. It was shown by a certified copy from the records of the office of the collector of internal revenue for the district of Georgia that the accused had registered and paid the Federal tax as a retail liquor dealer for the first half of the year 1911; the place where the business was being carried on being designated as 601 Fourth street, Macon, Ga. This was the address to which the liquor mentioned in the bills of lading was consigned. . Apart from these writings, it does not affirmatively appear that the defendant's place of business was at 601 Fourth street, in Macon. The oral evidence speaks of his place of business as being at the corner of Fourth and Plum streets, in Macon, and this latter address is given as the address at which the draymen delivered the barrels and packages said to contain liquor. The accused made no statement and introduced no evidence.

We think that the evidence is amply sufficient to support the conviction. It is said that it has not been proved that the packages which were delivered to the place of business of the accused from the railway station were in fact intoxicating liquors. This is sufficiently proved by the fact that these packages were marked "whisky," that they were entered upon the freight bills, bills of lading, and receipts to the railway company as whisky, and that the accused himself recognized the contents of the packages as such, by making memoranda upon the freight bills thus describing them, requesting the freight agent to deliver them to the draymen for him. To state it more plainly, the State introduced in evidence freight bills which on their faces purported to be for shipments of whisky, together with the defendant's written order thereon to the agent, asking him to deliver the above to a named drayman, to whom the packages were in fact delivered, and by whom they were carried to the defendant's place of business. We are under the impression that there is an interstate-commerce regulation (and these were interstate shipments) requiring the contents of packages containing alcoholic liquors to be truly marked. If so, the very fact that the packages were marked as containing whisky has even higher value as circumstantial evidence than it otherwise would have. This court has, however, fully recognized the principle that proof that an article was treated by the accused himself as whisky is at least prima facie sufficient to prove that the article was

whisky; as where a purchaser calls for whisky, and the accused, as seller, delivers it.

We shall presently discuss the evidentiary value of the fact that the accused had registered with the internal-revenue collector of the United States government as a retail liquor dealer. We need not enter upon that now. As it was proved that these packages, thus presumptively containing intoxicating liquors, were delivered with the defendant's consent into his place of business, it was sufficiently shown that he kept them on hand at his place of business, in the absence of any proof to the effect that they were merely deposited there for the moment and immediately removed elsewhere. It may be that there is some difference between the meaning of the words "keep on hand," as used in this statute, and such an expression as "have in one's possession" (see dissenting opinion of Russell, J., in *Cohen* v. *State,* 7 *Ga. App.* 5 (65 S. E. 1096)); but the majority of this court does not think that the keeping on hand must be continuous, in order to make it violative of the statute. Merely to allow liquors to be deposited in one's place of business, under peculiar circumstances, followed by an immediate removal of them, might not constitute a violation of the statute; but where it is shown that the liquors were delivered into the place of business with the proprietor's consent, and nothing further is shown as to the disposition of them, it is to be presumed, until the contrary appears, that he is keeping them on hand, contrary to the statute.

2. By exception to the refusal of a written request to charge, the plaintiff in error makes the point that to keep unopened packages of liquor at one's place of business is not a violation of the law. The statute makes no exception of this kind, and we know of no good reason for making any such judicial exception. Indeed, deference to the spirit of the act would prevent the making of any such exception by construction or interpretation.

3. The plaintiff in error has excepted also to the failure of the court to give in charge a number of requests to the effect that, if the jury should find that there was a mere temporary deposit of intoxicating liquors at the defendant's place of business, the law would not be violated. These requests were properly refused, for lack of evidence to support them. As we have already said above,

the State, by showing delivery of the liquor into the accused's place of business, with his consent, made out the case against him; and he in no wise attempted to avoid the effect of the State's evidence by any refutation or explanation or by any attempt to show that his custody of the liquor at his place of business was merely transient.

4. The State introduced in evidence a certified abstract from the records of the collector of internal revenue of the district of Georgia, and showed that the receipt for the tax due to the government had been issued to the accused for the first six months of the year 1911, for the business of retail liquor dealer, to be carried on at 601 Fourth street, Macon, Ga. At the time this evidence was offered, the defendant objected to it, on the ground that it was not a copy of a paper required by law to be kept in the office of any particular officer; also because it was immaterial, since the State had abandoned the prosecution on the count charging a sale. The first of these objections is answered by the decision of this court in *Huckabee* v. *State, 7 Ga. App.* 677 (67 S. E. 837). As to the second objection: We think that it is relevant, in a prosecution for keeping intoxicating liquors on hand at one's place of business, to show that the accused has paid the government tax as a retail dealer; for it is a matter of legal knowledge that this tax is paid upon an application reciting that the person paying it intends to engage in that business. One who makes preparation and pays out money for the purpose of engaging in the business of a retail liquor dealer is much more liable to have intoxicating liquors on hand at his place of business than one who has not. It is not necessary, in a prosecution for keeping intoxicating liquors on hand at one's place of business, to show that any of the liquor has been sold; but when liquor has in fact been sold at one's place of business, this is conclusive evidence of the crime. The two acts of preparation—the getting of the liquor and the taking out of the government license—are natural concomitants, and the one has relevancy as supporting the probative value of the other.

We have not overlooked the act of August 21, 1911 (Acts 1911, p. 180), which makes it prima facie evidence of guilt in certain cases for any person to be in possession of, to make application for, or to have issued to him the United States special-tax receipt as a retail liquor dealer. This act, by its terms, is applicable to the

trial of cases brought to abate or enjoin the operation of "blind tigers," and to prosecutions for the illegal sale of intoxicating liquor. In those cases proof of the defendant's having paid the government tax as a liquor dealer is made prima facie evidence of guilt. The act is without direct applicability where mere keeping on hand is charged; but, independently of this statute, the fact of the defendant's having applied for and having paid for the special-tax receipt is relevant. The case of *Huckabee*, supra, was decided prior to the passage of this act, and therefore shows that, irrespective of the statute, proof of this nature may be received.

The point is made that this tax receipt specifies the place at which the retail liquor dealer's business is to be carried on as "601 Fourth street, Macon, Ga.," while the proof shows that the place where the liquor was delivered was the corner of Plum and Fourth streets, and, therefore, that the connection between the two is not sufficiently shown. The jury probably inferred that the two addresses were identical, from the fact that the address given on the bills of lading on which the liquors were shipped and under which the defendant received them designated the place where they were to be delivered as 601 Fourth street, and that the draymen, under this direction, delivered them at the corner of Plum and Fourth streets. But, even if this is not so, the evidence as to the payment of the government tax would not be wholly without relevancy; for, say that the two addresses are different, but in the same general locality, the jury might believe that the accused, intending to open his place for illegal sale at the address stated in the tax receipt, had stored his general stock near by in his other place of business.

5. The defendant, by numerous requests to charge, attempted to get the benefit of some such theory as that if the accused had taken out, under the act of 1908, license as a "near beer" dealer— that is, a license to sell imitations and substitutes for beer, wine, whisky, or other spirituous or malt liquors—his liability to prosecution, and the effect of the evidence against him, would be legally different from what it would be if he had not procured this license. One of the instructions requested, on this line, was as follows: "If at the time of the passage of the act of September 5, 1908, known as the 'near beer act,' there was not, and is not now, any beverage or drink or liquor, known to science or practical use in this State, in

imitation of or intended as a substitute for beer, whisky, or other alcoholic, spirituous, or malt liquors, that did not contain alcohol, then and in such event said act authorized the license and the sale of beverages or drinks of liquors containing alcohol; and proof that the beverage or liquor kept on hand or sold by the · defendant contained alcohol would not, of itself and without more, authorize the conviction of the defendant." The act taxing "near beer" and other imitations of liquors (Acts 1908, p. 1112) expressly provides that "nothing in this act contained shall ever be held, taken, or construed to authorize the sale. of any beverage, drink or liquor now prohibited by law." And the law then prohibited, and now prohibits, throughout the State, the sale of any and all kinds of liquors of such a nature as will, if drunk to excess, produce intoxication. "Near beer," the thing at which the act in question was particularly aimed, has been defined by this court as follows: "'Near beer' is a term of common currency, used to designate all that class of malt liquors which contain so little alcohol that they will not produce intoxication, though drunk to excess." *Campbell* v. *Thomasville*, 6 *Ga. App.* 212 (64 S. E. 815). The evidence in the present case related only to whisky as such, and there is not the slightest suggestion in the record of any other form of liquor or imitation of liquor; and whisky, of course, is judicially known to be intoxicating; so that in no event did the judge err in not giving the charges requested.

The whole record shows a clear case of guilt, followed by a legal trial and a conviction; hence the judgment is　　　*Affirmed.*