4678.  AUGUSTA RAILWAY & ELECTRIC CO. *v.* BEAGLES.

The controlling questions in this case were perplexing problems of fact, the law applicable to these questions was fully, clearly and correctly presented in the charge of the court, and this court can not say that the solution by the jury was not supported by evidence, or that the trial judge committed any material error in the admission of testimony. The record shows no reason for another trial.

DECIDED JUNE 25, 1913.

Action for damages; from city court of Richmond county—Judge Eve. January 14, 1913.

The Augusta Railway & Electric Company, plaintiff in error, is a Georgia corporation, engaged in the manufacture of electricity, which it supplies for hire to the inhabitants and manufacturing plants of Augusta in the State of Georgia, and North Augusta in South Carolina. The Industrial Lumber Company is a corporation located in North Augusta, South Carolina, and the Augusta Railway & Electric Company furnishes to it electric power, both for lighting and for motor purposes. The electric company carries 2,300 volts on its primary wires, which voltage is cut down to 220 volts for motor power in the lumber company's plant and 110 volts for lights in the plant. The plaintiff was employed by the lumber company in its plant, as a machinist and saw-filer, and, while engaged in his duties as such on December 24, 1910, was called by the general manager to fix a light in the plant, which was out of order. In compliance with this order, the plaintiff went to repair the defective light, and, while in the act of turning it on, received a severe shock from an electric current, which caused injuries for which he sought to recover damages. His petition alleged that the electric company was negligent in the following particulars: First, that it permitted a high and dangerous voltage to be transmitted to the secondary wires in said plant, rendering it dangerous for him to handle said lights, and that he was unaware of the existence of this dangerous condition; second, that it permitted its transformer, con-

54

necting its primary wire with the secondary wire entering the plant, to become and remain out of repair, without sufficient insulation and in a burnt-out or punctured condition, so that the electricity escaped therefrom and became grounded and liable to be communicated to persons using the electric-light lamps on the secondary wire; third, that the defendant left said primary and secondary wires at the transformer uninsulated and hanging near enough together to come in contact outside the transformer, and thus to transmit the full current to the secondary wire, upon which was attached said electric lamp, so that connection with the primary wire caused the circuit to be complete, and the secondary wire to become charged with the full current of the primary wire, a voltage of more than 1,000 volts, or a voltage greatly in excess of 110 volts, the proper amount for said secondary wire. The defendant relied upon the following defense: (1) that the injury complained of was the result of the plaintiff's own negligence; (2) that the plaintiff, by the exercise of ordinary care and diligence, could have avoided the consequences of the alleged negligence; (3) that if otherwise, the alleged injury was the result of an accident pure and simple, for which the defendant is in nowise responsible; (4) that the defendant and its servants at the time and place of the alleged injury were in the exercise of all ordinary care and diligence; (5) that the plaintiff at the time and place of the alleged injury was himself guilty of contributory negligence, which, combining and concurring with the alleged negligence of the defendant, contributed to the injury as a proximate cause thereof, and without it the injury would not have occurred, in that the plaintiff, being employed by the lumber company to look after and keep in repair the electric-lighting wires and appliances in said building, negligently failed to do so, and negligently undertook to take hold of and handle with his naked hand an electric-light wire and appliances which he knew to be, or in the exercise of ordinary care should have known to be, in a defective and dangerous condition and carrying a dangerous current and voltage of electricity, liable to shock and seriously injure any one handling the same without the exercise of ordinary care to protect himself. The jury found a verdict for $5,000 in favor of the plaintiff; the defendant's motion for a new trial was overruled, and it brings error. The motion for a new trial was based upon the usual general grounds and special assignments of

error directed to certain alleged errors in excerpts from the charge
and in the admission of testimony.

*Boykin Wright, George T. Jackson,* for plaintiff in error.

*Isaac S. Peebles Jr., T. F. Harrison,* contra.

HILL, C. J. (After stating the foregoing facts.) As to the general grounds, it may be stated that the evidence is in some conflict as to the exact cause of the plaintiff's injuries. Unquestionably he received a severe shock from an electric current when he attempted to turn on an electric light in the lumber company's plant. But the electric company insists that the mere fact that he did receive this shock is not sufficient to raise an inference of negligence against it, under the doctrine of res ipsa loquitur, in any of the ways alleged in the petition; and it is insisted that his injuries could well have resulted from some defect of the lamp socket or in the interior wiring, for which the electric company was in no way responsible; or that they might have resulted from the plaintiff's own negligence, because it was shown by testimony of the highest expert character, and by an actual demonstration in the court-room on the trial of the case, that he could have received the injuries by grasping a defective light socket through which no more than 110 volts were passing; that the evidence shows that the plaintiff stood upon the damp earth or brick floor when he took hold of the socket of the light for the purpose of turning the light on, and that, standing on such damp earth or brick floor, even a current of 110 volts would have been sufficient to give him the shock he received. There was evidence that the light socket was defective, and that by reason of this defect, for which the lumber company and not the electric company was responsible, the current of electricity passed out into the plaintiff. There was evidence also which tended to support the theory of the petition on the question of negligence. There was positive evidence that the primary and secondary wires had been permitted to come in contact with each other outside of the plant or the transformer, and by this contact the full current carried by the primary wires had been transmitted to the secondary wires and on into the plant. It was also shown by the evidence for the plaintiff that it would have required from 400 to 1,000 volts of electrical current to produce the effect on the plaintiff which was caused by the shock he received. These theories of the evidence presented perplexing problems, which

were for the exclusive solution of the jury; and this court can not legally say that the solution which a jury has made of a problem thus presented is incorrect, where it is supported by any evidence, or by reasonable deduction from the evidence. There were only two ways, so far as the evidence discloses, by which the plaintiff could have been injured by the shock from the electric current. He received it by taking hold of a defective light socket inside the building, through which no more than 110 volts of electricity were passing, and which was rendered dangerous because he was at that time standing on the damp earth or brick floor; or, by reason of a contact of the primary wires with the secondary wires, which transmitted into the building the high voltage from the primary wires, he received this high voltage while turning on this light. There was evidence in support of both theories, and it was for the jury to say which theory was the truth. It has been held by high authority that where the plaintiff shows that he has received a shock from a high and dangerous voltage, the law raises a presumption of negligence against the electric company furnishing the electricity, and the burden is then upon the electric company to negative the presumption. Brown *v.* Edison Elec. Co., 46 L. R. A. 745, and cases cited. It can not be said that the company in the present instance carried this burden successfully, when it only presented a theory as to what may have caused the shock and the injuries to the plaintiff. It should have gone further and shown that this was the only way in which the injuries could have been received, and should have fully rebutted the evidence in behalf of the plaintiff, which tended to prove the allegations of negligence against the company, and that this negligence caused the shock and its consequent injuries. The learned trial judge instructed the jury very favorably on behalf of the defendant company. He charged that the defendant would not be liable for any injury that was received from defective appliances or wires inside of the plant, but that the electric company was only responsible for the condition of the wires outside of the lumber plant. And he instructed the jury that this cause of action arose in South Carolina, where, under the law, the plaintiff would have no right to recover if he was guilty of any contributory negligence, however slight.

Another contention of the plaintiff in error which is urged with a great deal of earnestness is that the evidence shows that the

plaintiff himself was an electrical engineer; that his duty was, among other things, to look after the interior wiring and fix any wires that might be out of shape, and that, in pursuance of this very duty and for this very reason, he was sent to the light which was reported out of order; that he occupied, relatively to the lights and interior wiring, the same position as the "trouble finder" of an electric company, and that, as such, he assumed the risks of the trouble he was sent to find and remedy; that in endeavoring to fix the light he acted with full knowledge that something was wrong; that he took absolutely no precaution for his own safety, and he did not cut off the current, but negligently grasped the lamp socket in his naked hands while standing on a damp floor. The evidence did not show that the plaintiff was an expert electrician. He was called upon occasionally to fix the wires in a mechanical way, but where there was any electrical or dangerous work to do, a more expert electrician was called upon to do it. In other words, the evidence was not of such character as would show that the plaintiff was the expert inspector whose duty it was to find out defects in the electrical appliances of his master and remedy such defects. But these were questions for the jury. It is deemed unnecessary to discuss further the general grounds of the motion. An examination of the very able and exhaustive charge of the trial judge shows that all the contentions of the defendant were fully and clearly given to the jury, in a manner favorable to these contentions. All of these contentions were issuable, under the facts, and, having been fully and favorably given to the jury, their solution by the jury must be considered as conclusive. This brings us to the consideration of the special grounds of error assigned in the motion for a new trial.

The sixth and seventh grounds of the amended motion for a new trial except to the admission of testimony, over the objection of defendant, that the lightning arrester had fallen from the pole in the vicinity of the lumber company's plant, where the injury is alleged to have occurred, and that the wire that goes in the top of the arrester was out and dangling, after the arrester itself had fallen to the ground. The objection to this evidence was that the petition contained no allegation of negligence in having a defective lightning arrester. The judge instructed the jury that there could be no recovery for damages resulting from a defective lightning

arrester, and stated that this testimony was admitted solely for the purpose of showing (if it did show) how the primary and secondary wires came in contact. This condition of the wires in connection with the lightning arrester may have been considered by the jury as the cause for the contact of the primary with the secondary wires, thus permitting the transmission of the high voltage from the primary to the secondary wires in the plant of the lumber company, and causing the shock when the plaintiff turned the fixture and received this high voltage of electricity. We think this condition of the wires outside the plant was clearly admissible for the purpose of showing at least all the circumstances constituting what might be called the res gestæ of the transaction, although this condition might not have been fully covered by the allegations of the petition. *Palmer Brick Co.* v. *Chenall,* 119 *Ga.* 837 (47 S. E. 329). But testimony to the same effect was admitted, without objection by the defendant, when it was brought out on cross-examination of another witness introduced by the plaintiff; and therefore, even if there was error in admitting such testimony the first time over the defendant's objection, the error was cured by the introduction of the subsequent testimony without objection. Certainly it would not constitute reversible error. *Becker* v. *Shaw,* 120 *Ga.* 1003 (48 S. E. 391). But as we before stated, this evidence, it seems to us, was clearly admissible for the purpose of showing how the primary and secondary wires came together, and as illustrative of the means by which the excessive current was transmitted from the primary to the secondary wires.

The other grounds of the motion for a new trial consist of exceptions to excerpts from the charge of the court. We have examined the excerpts in connection with the general charge, and we fail to find any material error. Indeed, we are impressed with the idea that the charge as a whole was a very fair and able presentation of all the issues in the case and of the law applicable thereto, and that the defendant has had a fair trial, and no reason is shown why the verdict in behalf of the plaintiff should be disturbed by this court.                    *Judgment affirmed.*