### 5940.  GRIFFIN v. THE STATE.

WADE, J.  1. The defendant was charged with keeping on hand intoxicating liquor at "a public place," to wit, "the pool-room operated by J. A. Andrews and Alex Poolas," and also with keeping such liquor on hand at the "place of business" of J. A. Andrews and Alex Poolas. There was proof that the pool-room in which the liquor was found was known as the pool-room of J. A. Andrews and Alex Poolas, and was a public pool-room, where the public played pool and paid for the use of the tables; that the pool-room was in a building owned by Poolas, and Poolas owned one of the pool-tables, while Andrews owned the remaining tables and alone actively conducted the pool-room and managed the business; and that after Andrews received from the proceeds an amount to cover his services, and Poolas received rent for the house, the profits were divided equally between the two. *Held:* (a) The evidence was sufficient to sustain the allegation that the pool-room was operated by J. A. Andrews and Alex Poolas. ' (b) A pool-room frequented and used by the public is a "public place," within the meaning of the prohibition statute. "The phrase 'public place,' as used in the prohibition law, by a broad, general, and not wholly exhaustive definition, includes any place which, from its public character, members of the general public frequent, or where they may be expected to congregate at any time as a matter of common right; also any place at which, even though it is privately owned or controlled, a number of persons have assembled, through common usage or by general or indiscriminate invitation, express or implied." *Tooke* v. *State*, 4 *Ga. App.* 495, 496 (61 S. E. 917).

2. Where one is charged with keeping on hand intoxicating liquor at a place of business, or at a public place, it is immaterial for what purpose the liquor was there kept, or, in other words, what may have been the intent of the defendant; since "the criminal act is the keeping on hand." *Cohen* v. *State*, 7 *Ga. App.* 5 (65 S. E. 1096). "Merely to allow liquors to be deposited in one's place of business, under peculiar circumstances, followed by an immediate removal of them, might not constitute a violation of the statute." *Cassidy* v. *State*, 10 *Ga. App.* 125 (72 S. E. 940). In this case, however, there were no peculiar circumstances authorizing the deposit of the whisky at the pool-room in which it was placed; and while there was evidence from which the jury might have inferred that the deposit was intended to be merely temporary, a finding to the contrary was authorized.

3. On the trial of a criminal case, as a general rule, it is error to allow proof tending to establish the defendant's guilt of a different crime from that with which he is charged in the indictment or accusation; but the testimony in this case, to the effect that the defendant had not done any work "for some time," to which the defendant objected on the ground that "it virtually placed him upon trial on the charge of vagrancy" and tended to prejudice the minds of the jurors against him, was not sufficient to create the inference that he was gulity of that crime, in the absence of evidence that he had no property or other means of support and was able to work (Penal Code, § 449); and there was testimony of another witness for the defendant to the same effect, to

which no objection appears to have been made. *Daughtry* v. *Savannah &c. Ry. Co.*, 1 *Ga. App.* 393 (3) (58 S. E. 230); *Augusta Ry. Co.* v. *Beagles*, 12 *Ga. App.* 854 (78 S. E. 94). If the admission of this testimony was error, the error was not of such materiality as to require a new trial.

4. It is within the discretion of the trial judge whether, after the close of the evidence, he will allow the case to be reopened in order that additional evidence may be introduced. *Powell* v. *State*, 101 *Ga.* 9 (3), 10 (29 S. E. 309, 65 Am. St. R. 277); *Milam* v. *State*, 108 *Ga.* 29 (4), 33 (33 S. E. 818); *Strickland* v. *State*, 115 *Ga.* 222 (41 S. E. 713); *Fordham* v. *State*, 125 *Ga.* 791 (54 S. E. 694); *Bundrick* v. *State*, 125 *Ga.* 753 (54 S. E. 683); *Whitehead* v. *State*, 126 *Ga.* 558 (55 S. E. 403); *Green* v. *State*, 119 *Ga.* 120 (45 S. E. 990); *Glasco* v. *State*, 137 *Ga.* 336 (73 S. E. 578).

*Judgment affirmed. Broyles, J., not presiding.*

RUSSELL, C. J., concurring specially. As stated in the dissenting opinion in *Cohen* v. *State*, 7 *Ga. App.* 5 (65 S. E. 1096), I see a material difference between a temporary "keeping" of an article and the keeping of the same thing "on hand,"—the latter expression necessarily implying intentional habitude, and the former (the mere keeping) not necessarily meaning more than a temporary deposit altogether consistent with innocence; but I concur in the judgment in this case, since I am bound by the ruling in *Cohen's* case until it is reviewed, and it can not be overruled when only two Judges are presiding.

DECIDED DECEMBER 24, 1914.

Accusation of keeping liquor at a public place, etc.; from city court of LaGrange—Judge Harwell. May 13, 1914.

From the evidence it appeared that the defendant sent to a liquor dealer a money-order for 100 pints of whisky, to be shipped to himself, stating that the whisky was for the personal use of himself and others named, and stating the number of pints ordered for each. A barrel containing 100 pint-bottles of whisky, shipped in pursuance of this order, was delivered to him at the office of the express company in the city of LaGrange, and placed on a dray, and he went with it to a place called Three Points, to which he had directed the drayman to take it. The drayman testified, that they "drove out together until just before reaching the pool-room at Three Points, . . just outside the city limits of LaGrange. Just before witness reached the drug-store at Three Points Mr. Griffin [the defendant] got off the wagon and told witness to drive up to the pool-room. He . . did not tell witness to put the package or barrel in the pool-room, but witness was in a hurry, and when he got to the pool-room he backed his wagon up to the door and rolled the barrel into the room. Some other gentleman was in the pool-room at this time. . . Mr. Griffin came in the back

door of the pool-room, and . . somebody said (either Mr. Griffin or the other gentleman), 'You had better get that stuff out of here.' Mr. Griffin said, 'I will get it out another way.' The barrel was not opened while witness was there;" he left when paid for his trip. From other testimony it appeared, that it was about 7 o'clock in the morning when the barrel was received by the defendant at the office of the express company, and that about 9 o'clock a policeman and a constable went to the pool-room in which it was placed, and found that the barrel had been opened, and found 87 pint-bottles of whisky stacked up on the floor, under the counter, in the pool-room, where "the soda-water and other cool drinks and the ice-box" were kept; and they found the defendant in a vacant dwelling-house, "just back of the pool-room," with a suitcase, in which were 16 pints of the same brand as the liquor discovered in the pool-room. It was testified that the pool-room was a public place, where the public played pool and paid for the use of the tables, but that the dwelling-house was not a public place and was not connected with the pool-room, and no business was carried on in it. The defendant was not employed there.

In his statement at the trial the defendant said, that he had the drayman carry the whisky to Three Points, and that the drayman put it in the pool-room without his knowledge, and as soon as he found that it was in the pool-room he went to get George McKamie to bring a dray and move it out, but began carrying it himself in the suit-case to the vacant house before McKamie arrived. McKamie testified that just before the officers came to the pool-room a man who looked like the defendant called to him to hitch up his wagon and come to the pool-room as soon as he could and move a package, and that on his arrival at the pool-room with his wagon he found the officers there. Another witness testified: "I went to the pool-room about the time the liquor was placed there. Bob Griffin (the defendant) and John Padgett, who worked there, were talking about getting the liquor out, and I told him the same thing. Griffin said, 'I will get it out in time;' and Bob went across the field to where George McKamie was at work, to get him to move the liquor, but before George got there the officers came and seized the liquor. The defendant . . had come back and had taken out a suit-case full of the liquor before the officers got there." "Bob Griffin does not work in the pool-room. . .

He has not done any work of any kind for some time." There was testimony to the effect that the defendant and others named in the order to the shipper had "made up a club" for the purpose of ordering the whisky, each paying a part of the money sent with the order.

*Arthur Greer,* for plaintiff in error.
*Henry Reeves, solicitor,* contra.