## BUNDRICK *v.* THE STATE.

1. The constitution requires that all criminal cases be tried in the county where the crime was committed. After a new county is laid out and organized from the territory of an old county, the courts of the latter county are without jurisdiction to try a case for an offense committed within the limits of the new county before its organization. Where an indictment is returned in the old county for a crime committed within the bounds of the new county, upon the organization of the new county the indictment and other papers connected with the case should be transferred to the proper court of the new county, and the case be tried in the new county.

2. If two persons deliberately agree to fight with deadly weapons on a subsequent day at a definite time and place, and both being armed meet by chance near the appointed place and near the appointed time, and without any fresh cause of quarrel or other altercation one slay the other without justification, the crime is murder and not voluntary manslaughter.

3. The reopening of a case after both sides have closed and the argument begun is a matter for the discretion of the court, and a refusal to do so will not be reversed unless decided injustice results from such refusal. The discharge of all the witnesses for one side after the case has been announced closed is good ground for refusing to reopen the case at the instance of the other party; and especially is this true where the salient features of the evidence sought to be offered after the argument had progressed appeared in the testimony of two witnesses who had testified.

4. A declaration by the mother of the deceased, made after the homicide, that the only thing she was surprised at was that her son had not killed the defendant, instead of defendant killing her son, is hearsay and inadmissible for the purpose of illustrating the feeling of the deceased towards the accused.

Argued June 18,—Decided July 2, 1906.

Indictment for murder. Before Judge Littlejohn. Crisp superior court. April 28, 1906.

*Whipple & McKenzie,* for plaintiff in error.

*John C. Hart, attorney-general, Frank A. Hooper, solicitor-general,* and *D. A. R. Crum,* contra.

EVANS, J. At the February term, 1903, of Dooly superior court, an indictment for murder was preferred against Andrew Bundrick

and George Bundrick. The former was tried in Dooly superior court at the same term at which the indictment was returned. The charge against George Bundrick remained pending in Dooly superior court until February, 1906, when by order of the court the indictment was transferred to the superior court of Crisp county for trial, without his request or consent. He was arrested in June, 1905, and was confined in the common jail of Dooly county, awaiting trial, when the case was transferred from Dooly county to Crisp county. The county of Crisp was organized on November 22, 1905. When the case against George Bundrick was called for trial, he pleaded to the jurisdiction of Crisp superior court, alleging in his .plea of abatement the foregoing facts, and admitting that the locality where the homicide was committed is now embraced within the territorial limits of the county of Crisp. A demurrer was interposed to the plea in abatement, and the court sustained the demurrer and struck the plea. On the trial of the case the State offered evidence tending to show, that, on the day previous to the homicide, the defendant and the deceased had engaged in a verbal altercation about some trivial matter, and the culmination of this altercation was a mutual agreement· to settle their differences by meeting at a certain place during the forenoon of the following day, there "to shoot it out." On the morning of the next day, the deceased and his wife were traveling in a buggy on a public highway leading from the home of the father-in-law of the deceased, where he had been to get his wife, to his own home. When they had reached a point on the road about a quarter of a mile from the appointed rendezvous, the defendant and his brother were observed sitting behind a stump in a cluster of bushes near the roadside; each of them was armed with a gun, and on the approach of the buggy they crossed the road in front of it and stood upon the side of the highway. As soon as they were seen by the deceased, he threw the top of the buggy partly back. He had a repeating rifle of small caliber, which was resting against the seat of the buggy, between himself and his wife. When the accused and his brother crossed the road, the buggy was quite near them, and the accused threw up his gun and asked the deceased, "Are you ready?" The wife of the deceased exclaimed, "Oh, please don't!" Immediately, both the accused and his brother fired upon the deceased, the accused firing the first shot. Four shots were fired by them

in rapid succession. The deceased made no attempt to use the rifle in his buggy. The horse, upon the firing, ran; the wife fell out of the buggy, and a little further on the buggy was overturned and the body of the deceased was thrown out. About three feet further along the road the rifle was found; it had not been discharged. The deceased was shot through the mouth and in the back, and was instantly killed. The wounds inflicted upon him were made by both large and small shot and also by slugs. After the homicide the accused fled to a distant State, where he was arrested a few months before the trial. In his statement before the jury he contended that on several previous occasions the deceased had made threats against his life; he admitted the agreement made on the previous day between himself and the deceased to meet at a designated place to settle their dispute by "shooting it out;" but he insisted that he had abandoned his purpose of meeting the deceased at the appointed time and place, and was walking along the road for the purpose of going to the post-office and there mailing a letter, not expecting to meet with the deceased. The accused also undertook to explain that he had been cutting peas and took his gun with him so that he might kill some doves, should he find any; that while on his way to the post-office, he observed the deceased and his wife riding in a buggy, and, when within seventy-five or eighty yards of them, saw the deceased hand his wife the lines and throw the top of the buggy about half back and jerk the horse from a trot into a walk; that when the buggy had approached to within ten or fifteen feet, he (the accused) stepped out of the road to allow it to pass, and said to the deceased and his wife, "Good morning;" that the deceased had his rifle in a position for shooting, the muzzle resting on the dashboard, the stock between his knees, and replied to his salutation, "God damn you! you are ready, are you?" and fired; that just as he was in the act of firing, his wife caught him by the shoulder and jerked him, causing him to miss the accused; and that as deceased reversed the rifle and appeared determined to kill the accused, the latter shot the deceased. The accused also stated, that as he shot the horse ran; when the horse was opposite to him, he saw the rifle projecting and pointing towards him, and he fired again just after the buggy passed him; not knowing the effect of his shots, he threw his hand back to get more shells to put in his gun, but instead drew his pistol and fired at the de-

ceased twice with that.    The accused stoutly denied that his brother was there, and insisted that the shooting was done in self-defense. The jury returned a verdict of guilty, without recommendation, and the accused made a motion for a new trial, which was over-' ruled.    In his bill of exceptions he complains of the striking of his plea in abatement and the overruling of his motion for a new. trial.

1. The constitution requires that all criminal cases shall be tried in the county where the crime was committed.    Civil Code, § 5874. This constitutional provision relates to the *trial* of criminal cases, and the venue thereby fixed is the county which embraces the locality of the crime at the time of the trial, without reference to the particular county which may have included that locality at the time of the commission of the offense.    In *Jordan* v. *State, 22 Ga.* 555-6, it appeared that at the time the homicide was committed, the locus of its commission was in the county of Baker, but that subsequently the county of Dougherty was organized and embraced within its defined boundaries the place at which the homicide was committed. The defendant was indicted in Dougherty county and tried in that county; and this court held that he could not have been prosecuted in the county of Baker at the time the indictment was found, because the territory wherein the offense was committed was no longer in the county of Baker, and the superior court of Dougherty county had acquired jurisdiction.    The constitution of 1868 provided that cases respecting title to land should be tried in the superior court of the county wherein the land was situate; and it was accordingly held, in *Kelly* v. *Tate, 43 Ga.* 535, that where an act of the legislature changed certain county lines and placed the land in controversy within a different county from that in which the suit respecting title thereto was tried, the judgment obtained in an eject-ment suit instituted before the formation of the new county but tried in the old county after the formation of the new county was absolutely void, because the transfer of the locus in quo from the county in which the suit was instituted to the new county deprived the trial court of all jurisdiction over the subject-matter of the litigation.    The cases cited, as well as others arising both in this State and in other jurisdictions, were discussed in a late case, wherein it was ruled that whenever the venue has been changed by legislative enactment, the court in which the case was pending after

such change had the inherent power to order a transfer of the case to the proper court in the new county, and that such court had like power to take jurisdiction of the case and carry the same to final judgment. *Pope* v. *State,* 124 *Ga.* 801. It is not a question of privilege on the part of the defendant to have his case transferred and tried in the new county, but a matter of jurisdiction, fixed by the provisions of the constitution with respect to the venue. The accused could not lawfully have been tried in Dooly county after the formation and organization of the county of Crisp; and the superior court of Dooly county, without notice to and even against the protest of the accused, had the right, and was under the duty, to transfer the pending indictment, with all papers connected therewith, to the superior court of Crisp county for trial and final disposition.

2. Complaint is made in the motion for a new trial that the trial judge erred in refusing to charge on the law of voluntary manslaughter. A casual reading of the synopsis of the evidence submitted by the State will suffice to show the case to be one of assassination. Nothing in the evidence offered by the State remotely suggests any grade of homicide other than that of murder. Neither the statement of the accused nor the testimony offered in his behalf justified any instruction to the jury upon the law of voluntary manslaughter. If the defendant and the deceased, after a verbal altercation, deliberately agreed to fight with deadly weapons on a future day, at a fixed time and place, and, both being armed, casually met near the appointed time and near the appointed place, and without any fresh cause of quarrel or other altercation the defendant killed the deceased without justification, the crime was murder. If two men deliberately agree to fight a duel with deadly weapons, and the duel is fought pursuant to the agreement and one of them is killed, his slayer will be guilty of murder. Penal Code, §§ 348, 350. The premature fighting of the duel, resulting from a casual meeting, where nothing has intervened to arouse the sudden passion of the slayer, will not afford any reason for reducing the homicide to the grade of voluntary manslaughter. The only theory presented by the statement of the accused was that of self-defense: that he had abandoned his previous intention to engage in mortal combat with the deceased, that their meeting was purely the result of chance, and that the deceased was endeavoring to make a

felonious assault upon the person of the accused at the time he fired the fatal shot. Under such circumstances, the accused would be justified in repelling the felonious assault to the extent of taking the life of his assailant, if necessary or apparently so, and the accused acted, not in a spirit of revenge, but under the fears of a reasonable man.

3. Both sides, after submitting testimony, announced closed. The State's witnesses, after the announcement that no additional evidence would be offered, left the court, and the argument of the case was begun. The next morning, pending the argument, counsel for the accused moved to reopen the case to allow a witness to testify to certain threats which the deceased had made against the accused on the afternoon preceding the homicide. The substance of the testimony of this witness had already been testified to by two witnesses offered and examined by the accused. State's counsel resisted the granting of the motion, because of the absence of its witnesses, and the court declined to reopen the case and allow the witness to be sworn. Complaint is made of this ruling, inasmuch as the accused made a showing to the court to the effect that, despite he and his counsel had exercised due diligence in preparing for trial, they had been uninformed as to the testimony expected to be elicited from this witness until after the case had been closed and argument had begun. The reopening of a case after both sides have announced closed and the argument has commenced is a matter of discretion resting with the trial judge, and his refusal to reopen the case will not be reversed unless decided injustice results therefrom. The discharge of all the witnesses for the State after the case has been closed and their absence from the court-room when the motion to reopen the case is made will afford good ground for refusing the motion made by the accused. *Maddox* v. *State*, 68 *Ga.* 294; *Strickland* v. *State*, 115 *Ga.* 225-6, and cit. Especially is there no abuse of discretion where the salient features of the evidence sought to be introduced upon the reopening of the case had been testified to by other witnesses offered and examined by the defendant. *Robinson* v. *State*, 118 *Ga.* 198.

4. The defendant offered to prove by a witness that the mother of the deceased remarked, soon after the homicide, that the only thing she was surprised at was that her son had not killed the defendant, instead of defendant killing her son. The court repelled

this testimony. It is insisted that the testimony was admissible for the purpose of illustrating the feeling of the deceased towards the accused. It was purely hearsay; it was not even in the nature of a threat, but only a declaration on the part of a third person that the difficulty had resulted differently from what she had anticipated, in view of what she presumably knew concerning something which had transpired in the past. The testimony was not admissible for the purpose for which it was offered, nor had it any bearing whatever upon the case.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*