## S98A0069. WALTHOUR v. THE STATE.
### (497 SE2d 799)

SEARS, Justice.

Andrew Walthour appeals from his malice murder conviction and resulting life sentence, claiming that hearsay evidence was improperly admitted in the State's case against him.[1] We find that the hearsay evidence Walthour complains of was an excited utterance, and thus was properly admitted under the res gestae exception to the rule against hearsay. We also find that the trial court's jury instructions were accurate, and that Walthour received effective assistance from trial counsel. Therefore, we affirm.

The evidence introduced at trial was sufficient to enable a rational trier of fact to conclude that Willie Simmons and Deardrew Miller believed that a drug deal involving Walthour would occur near Walthour's Chatham County home on the morning of November 15, 1995. Simmons and Miller drove to the place where they thought the transaction would take place, and waited. When a car bearing Florida license tags approached, Simmons and Miller began shooting at the car's occupant, who dropped a bag of cocaine when he fled. Miller then took the cocaine.

Shortly thereafter, Simmons and Miller were shot at by Walthour's cousin. Miller then telephoned Walthour, and during their

---

[1] The murder was committed on November 15, 1995, and Walthour was indicted on September 25, 1996 for malice murder, two counts of felony murder, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. He also was noticed with being a recidivist. The trial was held on March 31-April 2, 1997, and Walthour was convicted on all counts. The aggravated assault, possession of a firearm by a convicted felon, and felony murder convictions were vacated by operation of law, and Walthour was sentenced to life imprisonment for the malice murder conviction and a consecutive five-year term for possession of a firearm by a convicted felon. Walthour filed a motion for new trial on April 24, 1997, which was amended on July 7, 1997. He filed a second motion for new trial on July 24, 1997. The transcript was certified by the court reporter on May 14, 1997. After a hearing, the new trial motions were denied on August 6 and 7, 1997, respectively. Walthour timely filed his notice of appeal to the Court of Appeals on August 12, 1997, and that court properly transferred the appeal to the Supreme Court of Georgia on September 24, 1997. The appeal was docketed with this Court on September 26, 1997, and submitted for decision without oral argument on November 17, 1997.

conversation, Walthour threatened to kill Miller. That same afternoon, Miller was in a grocery store parking lot, when he was shot and killed in a drive-by shooting. Shortly before the murder, Walthour was seen near the grocery store, carrying an assault rifle. At trial, the daughter of Walthour's girl friend identified him as the shooter. Also at trial, Walthour's cousin was identified as the driver of the car used in the drive-by shooting.

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to enable a rational trier of fact to find Walthour guilty beyond a reasonable doubt of malice murder and possession of a firearm while committing a felony.[2]

2. At trial, Simmons testified that shortly before the murder, he watched Miller place a phone call to Walthour, and that when the call ended, Miller told Simmons that he (Miller) had to "get" Walthour, because Walthour had said he was going to kill Miller. Simmons testified that when Miller made this statement, he appeared to have been upset. Walthour claims on appeal that the trial court erred in admitting Miller's hearsay statement under the excited utterance exception to the rule against hearsay evidence, because the statement was too remote in time from Miller's murder to qualify as an excited utterance. Walthour also argues that Simmons's lack of credibility militates against allowing the admission of any hearsay statements recounted by him. We review the trial court's admission of the hearsay statement under the clearly erroneous standard.[3]

Included in our Code's res gestae exception to the rule against hearsay[4] is an exception for excited utterances.[5] In order to qualify as an excited utterance, an event precipitating the statement must have been sufficiently startling to render inoperative the declarant's normal reflective thought processes, and the declarant's statement must have been the result of a spontaneous reaction, and not the result of reflective thought.[6]

In this case, the event precipitating Miller's excited utterance

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982).

[4] OCGA § 24-3-3 ("Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae").

[5] *Brantley v. State*, 262 Ga. 786, 790, n. 1 (427 SE2d 758) (1993).

[6] See Strong, McCormick on Evidence, 4th ed., Vol. 2, § 272 at 216; *Wallace v. State*, 151 Ga. App. 171, 172 (259 SE2d 172) (1979) (if a declaration is voluntary and spontaneous, "appear[s] to spring out of" a precipitating event, and is "made at a time so near to [the event] as reasonably to preclude the idea of deliberate design," then the declaration is admissible as a spontaneous declaration); see also Strong, supra at 218-219 (a useful rule of thumb is that where the time interval between the precipitating event and the declaration is long enough to allow reflective thought, the statement should be excluded in the absence of proof that the declarant did not engage in a reflective thought process).

was Walthour's death threat against him. Considered in the context in which it was made, following Miller's and Simmons's retreat from gunshots fired at them by Walthour's cousin, we believe that Walthour's death threat was a startling event that, in all probability, impeded Miller's normal thought processes. Furthermore, Simmons testified that Miller repeated the death threat immediately after his telephone conversation with Walthour ended. Thus, the utterance appears to have been spontaneous and not the result of reasoned deliberation. This latter conclusion is supported by Simmons's testimony that when he made the declaration, Miller appeared to have been upset.[7] Accordingly, we find that the trial court did not err in admitting the hearsay statement under the excited utterance exception.[8]

3. During its charge to the jury, the trial court stated that

> Your job really is not to convict or acquit the defendant; it is simply to return a verdict in this case. It's the court's job to determine [sic] or convict the defendant, and the point that I'm making here is that even though he can only be convicted of one homicide, your job is to consider each count of the indictment separately and to return a verdict of guilty or not guilty on each of the three counts that charge a homicide. It's my job to sort it out and to actually convict the defendant, if he's convicted, [and] of course acquit him if he's acquitted by you, but I don't want you to be confused by the fact that there are three counts of homicide here. The State is entitled to bring these counts and allege alternative theories. Your job is not to worry about a duplication, but is simply to consider each count separately and return a verdict on each count.

Walthour argues that this charge discounted the jury's duty to acquit if it found that the evidence did not merit conviction, and was misleading insofar as it stated that the court would ultimately be responsible for either acquitting or convicting Walthour. To the contrary, this portion of the charge, while not directly addressing the State's burden of proof, nonetheless emphasized acquittal as a pos-

---

[7] Strong, supra at 219 (testimony that the declarant appeared nervous and upset, combined with a reasonable basis for emotional upset, will usually suffice for admission under the excited utterance exception).

[8] Regarding Walthour's argument that Miller's hearsay statement should have been excluded because Simmons was an unreliable witness, no separate credibility determination is required for admission under an exception to the rule against hearsay. Furthermore, Simmons's veracity was subject to attack on cross-examination, and the jury, as always, was the sole arbiter of witness credibility. *Norris v. State*, 258 Ga. 889, 890 (376 SE2d 653) (1989).

sible verdict. Furthermore, considering the charge as a whole, it properly instructed the jury's duty to consider each count separately and return a verdict as to each count, and sought to alleviate any confusion surrounding the fact that Walthour was charged with three homicide counts in connection with one killing. Finally, the trial court's instruction was a correct statement that under Georgia law — the jury is responsible for returning a verdict on each count, and it is the judge's responsibility to enter judgments of acquittal or conviction thereon.[9] Accordingly, this enumeration is rejected.

4. Walthour claims he received ineffective assistance of trial counsel due to counsel's (1) failure to use a private investigator for whom funds had been provided by the court, and (2) failure to move to bifurcate the trial with regard to the charge of possession of a firearm by a convicted felon and felony murder based on that offense. Our review of the new trial hearing transcript shows that trial counsel's decision to investigate the matter on his own was based upon his conclusion that the investigator hired to perform that task was doing an inadequate job, and thus was reasonable. Furthermore, counsel conducted a thorough and complete investigation that included interviews with all alibi witnesses, several interviews with witnesses for the State, visits to the crime scene, and the filing of numerous discovery requests. Moreover, even though trial counsel did not move for bifurcation, the trial court raised the issue sua sponte at the outset of trial, and determined that bifurcation was not appropriate in this case.

We also note that while Walthour alleges these instances establish the ineffective assistance of his counsel, he has not shown any prejudice that resulted from such purported ineffectiveness, as required.[10] Accordingly, we conclude that Walthour has failed to demonstrate either attorney error or resulting prejudice, and thus has failed to make out his claim for ineffective assistance of trial counsel.[11]

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 13, 1998 —
RECONSIDERATION DENIED MAY 4, 1998.

*C. Jackson Burch,* for appellant.
*Spencer Lawton, Jr., District Attorney, Thurbert E. Baker, Attor-*

---

[9] See *Sartin v. State,* 223 Ga. App. 759, 761-762 (479 SE2d 354) (1996).
[10] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[11] Id.

ney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General, for appellee.