S09A0557, S09A0558. DANIEL v. THE STATE (two cases).
(677 SE2d 120)

THOMPSON, Justice.

Appellants Warren Daniel and Marcus Daniel were jointly indicted and tried for murder and other crimes in connection with the shooting death of Kendrick Tennyson.[1] Warren was found guilty of malice murder, two counts of felony murder, aggravated assault and

---

[1] The crimes occurred on March 17, 2003. Appellants were indicted by the Athens-Clarke County grand jury on October 8, 2003. The indictment charged each appellant with malice murder, felony murder (four counts), armed robbery, aggravated assault (two counts), possession of a firearm by a convicted felon, theft by taking, and possession of a firearm during the commission of a crime (nine counts). After a jury trial, on December 5-22, 2003, and January 6, 2004, Warren Daniel was found guilty of malice murder, felony murder based on the underlying felony of aggravated assault with a deadly weapon, felony murder based on the underlying felony of possession of a firearm by a convicted felon, possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, and four counts of possession of a firearm during the commission of a crime. He received a life sentence for malice murder, a

numerous possession charges and sentenced to life in prison. Marcus, also sentenced to life, was found guilty of felony murder, aggravated assault, and two counts of possession of a firearm. Appellants' motions for new trial were denied by the trial court and they appealed. Finding no reversible error, we affirm their convictions.

1. The jury was authorized to find that Kendrick Tennyson was shot while standing outside the apartment complex where he lived. Several people were in the area of the shooting and eyewitnesses saw appellants point guns at the victim, shoot, and flee from the scene. Construed most strongly in support of the verdicts, the evidence was sufficient to find appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. There is no merit to Marcus' contention that the evidence was insufficient to support the verdicts because the State's evidence failed to exclude all other reasonable hypotheses save his guilt. Marcus' conviction was not based solely on circumstantial evidence. There was sufficient direct evidence of his guilt, including eyewitness testimony identifying him as one of the shooters and his own inculpatory statements. See *Bell v. State*, 284 Ga. 790 (1) (671 SE2d 815) (2009).

3. Both Marcus and Warren argue that the trial court abused its discretion by denying their separate motions for severance. See OCGA § 17-8-4 (a) (defendants jointly indicted for a capital felony when death penalty is waived "may be tried jointly or separately in the discretion of the trial court").

"It is incumbent upon the defendant who seeks a severance to show clearly that [the defendant] will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." [Cit.] Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and

consecutive five-year term of imprisonment for possession of a firearm during commission of a crime and a five-year consecutive term of probation for possession of a firearm by a convicted felon. Marcus Daniel was found guilty of felony murder based on the underlying felony of aggravated assault with a deadly weapon, aggravated assault with a deadly weapon, and two counts of possession of a firearm. He was sentenced to life on the felony murder count and a consecutive five-year term of probation on one of the possession charges. The remaining charges merged or were vacated by operation of law. Timely motions for new trial were filed on January 6, 2004 and amended on October 20, 2006 and February 12, 2007. The motions, as amended, were denied on April 25, 2008. Appellants filed notices of appeal to the Court of Appeals on May 6, 2008 and May 23, 2008. The appeals were transferred to this Court on December 11 and 12, 2008 by order of the Court of Appeals, docketed in this Court on December 23, 2008, and submitted for decision on the briefs.

> law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses.

*Rhodes v. State*, 279 Ga. 587, 589 (3) (619 SE2d 659) (2005). "'The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process.'" *Moss v. State*, 275 Ga. 96, 99 (2) (561 SE2d 382) (2002).

(a) Marcus contends the joint trial created confusion and caused prejudice to him because he was charged jointly with Warren with possession of a firearm by a convicted felon but the State presented no evidence that Marcus was a convicted felon. Marcus' contention that he was prejudiced by the joint trial on this basis is not supported by the record. The trial court granted a directed verdict of acquittal in Marcus' favor on the possession charge and directed jurors to limit their consideration of the possession of a firearm by a convicted felon offense and the related felony murder offense to Warren and to return a verdict as to those charges only as to Warren. We find no abuse of discretion in the denial of severance on this ground.

(b) Nor has Marcus shown a violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), based on the admission in evidence of Warren's statement to police that Warren and the victim had gotten into a fight a long time ago and the victim was "still bringing it up." *Bruton* excludes only the statement of a non-testifying co-defendant that standing alone directly inculpates the defendant. *Moss*, supra, 275 Ga. at 97-99 (2). While Warren's statement about the prior altercation could have provided a motive for the shooting, it did not, standing alone, inculpate Marcus in the charged crimes, and therefore, the introduction of this statement did not violate *Bruton*. See id.; *Thomas v. State*, 268 Ga. 135, 137 (6) (485 SE2d 783) (1997).

(c) Marcus also contends the court erred by denying his motion for severance because the State's use of Warren's statement to police violated his Sixth Amendment right to confrontation. See *Crawford v. Washington*, 541 U. S. 36, 68-69 (V) (C) (124 SC 1354, 158 LE2d 177) (2004). Even assuming the admission of Warren's statement was error under *Crawford*, we find no reasonable probability that it contributed to the guilty verdicts. See *Yancey v. State*, 275 Ga. 550, 557-558 (3) (570 SE2d 269) (2002). While the State may have offered Warren's statement in an attempt to show motive for the crimes, it was not necessary for the State to prove motive to establish either malice murder or felony murder and the evidence of Marcus' guilt of

the murder, including eyewitness testimony, was overwhelming. See *Humphrey v. State*, 281 Ga. 596 (3) (642 SE2d 23) (2007). Thus, the alleged violation of *Crawford* was harmless.

(d) Warren asserts his trial should have been severed from Marcus' because of the danger that the jury would be confused by the evidence and the law in distinguishing his alleged acts from those of his co-defendant brother. We find there was no danger of confusion in this case because there were only two defendants allegedly acting in concert and the evidence was not such that it would confuse the jury as to their individual participation in the crimes. See *Vaughns v. State*, 274 Ga. 13 (5) (549 SE2d 86) (2001). That the joint trial did not produce any confusion on the jury's part regarding the evidence against each defendant is visible in the fact that the jury found Warren guilty of malice murder while acquitting Marcus of the same charge. See *Simmons v. State*, 282 Ga. 183, 185-186 (4) (646 SE2d 55) (2007). Moreover, there was no evidence against one defendant that would have prejudiced the other, neither defendant testified at trial, they did not present antagonistic defenses, and the trial court protected the defendants by redacting Warren's statements directly inculpating Marcus and instructing the jury on the law of criminal intent and participation, parties to a crime, and a defendant's mere presence at the crime scene. See *Jackson v. State*, 284 Ga. 484, 485 (1) (668 SE2d 700) (2008). Accordingly, we find no abuse of discretion in denying the motion to sever.

4. The trial court did not err by refusing to bifurcate Marcus' charge of possession of a firearm by a convicted felon from the remaining charges. The possession charge was an underlying felony for one of the felony murder counts of the indictment, and therefore, bifurcation was not authorized. See *Jones v. State*, 265 Ga. 138, 138-141 (2) (454 SE2d 482) (1995).

5. Marcus contends his statements to police were involuntary because they were induced by hope of benefit. He specifically argues that his statements should have been excluded because investigators lied when they told him he was not a suspect.

For an incriminating statement to be admissible under Georgia law, "it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50. See *Turner v. State*, 203 Ga. 770, 771 (3) (48 SE2d 522) (1948) (rule of admissibility of incriminating statement same as applied to confession). Generally, the reward of lighter punishment is the benefit to which OCGA § 24-3-50 refers. *State v. Ritter*, 268 Ga. 108 (1) (485 SE2d 492) (1997). It is similarly well established that the use of trickery and deceit to obtain a confession does not render the confession inadmissible, as long as the means employed are not calculated to procure an untrue statement. *Vergara v. State*, 283 Ga.

175 (1) (657 SE2d 863) (2008); *DeYoung v. State*, 268 Ga. 780 (8) (493 SE2d 157) (1997).

The statements at issue were made during Marcus' second interview with investigators, an interview set up to clarify inconsistencies in his earlier statement. During this interview, Marcus was read his *Miranda* rights and was told by investigators that he was not a suspect. After a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the trial court determined Marcus' statements were voluntary because they were not obtained by deceit intended to elicit an untrue response and were not induced by the hope of benefit. We agree. The investigators' alleged deception regarding whether they had articulated a belief as to Marcus' participation in the crimes, or indeed had probable cause to obtain an arrest warrant, has no bearing on the voluntariness of his statement in the absence of any evidence that the investigative technique was designed to procure a false statement. See *Harris v. State*, 274 Ga. 422 (3) (554 SE2d 458) (2001) (overstatement by the investigators as to how much inculpatory evidence they presently possessed does not affect the admissibility of statement). Moreover, we agree with the trial court's determination that the description of Marcus as "not a suspect" offered no hope of benefit because it offered no potential future outcome. Compare *Foster v. State*, 283 Ga. 484 (2) (660 SE2d 521) (2008) (promise not to press charges related to weapon provided hope of receiving no punishment related to possession of weapon); *Richardson v. State*, 265 Ga. App. 711, 712 (1) (595 SE2d 565) (2004) (suggestion that defendant would not be charged based on "how the interview went" constituted forbidden false hope of benefit).

6. Marcus contends in two enumerations of error that the trial court improperly admitted into evidence the hearsay statements of Joshua Martin, a 12-year-old witness to the crimes. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. Included in the res gestae exception is an exception for excited utterances. *Brantley v. State*, 262 Ga. 786, 790, n. 1 (427 SE2d 758) (1993). To be admissible as an excited utterance, the proponent of the hearsay must show that the event precipitating the statement was "sufficiently startling to render inoperative the declarant's normal reflective thought processes, and the declarant's statement must have been the result of a spontaneous reaction, and not the result of reflective thought." *Walthour v. State*, 269 Ga. 396, 397 (2) (497 SE2d 799) (1998). Testimony "that the declarant appeared nervous and upset, combined with a reasonable basis for emotional upset, will usually suffice for admission under the excited utterance exception." Id. at 398 (2), n. 7.

Here, the record reveals that when police arrived at the crime scene they saw Martin standing over the victim, sufficiently upset that he could not speak. Minutes later, Martin, who was described as still visibly "distraught, upset, cursing, crying, almost like he was in shock," told an investigator he was in his kitchen when he saw Marcus and Warren outside with the victim with his hands up in the air. Martin heard gunshots and fell to the ground. When he stood up, he saw Marcus and Warren running around the building. Martin's aunt, the victim's girlfriend, testified that when she arrived at the crime scene shortly after the shootings she saw Martin standing near the victim crying profusely. When she asked Martin what happened, he identified appellants as the shooters and said they ran to "Four-Tay's apartment," the apartment of an individual associated with appellants. Both the investigator and Martin's aunt were allowed to testify at trial regarding Martin's statements.

As to the police witness, Marcus made no objection to the introduction of Martin's hearsay statements so the alleged error has not been preserved for review. See *White v. State*, 276 Ga. 583 (1) (d) (581 SE2d 18) (2003). Although an objection was raised as to Martin's statements to his aunt, these statements were made shortly after Martin witnessed the crimes, at a time when he was still upset by what he saw. Accordingly, the record supports the court's determination that the statements were spontaneous and "not the result of reasoned deliberation," *Walthour*, supra, 269 Ga. at 398, and their admission under the excited utterance exception was not error.

7. Marcus contends the trial court erred by failing to charge the jury on mistake of fact. Mistake of fact was not a separate defense in that the asserted mistake "concerned whether the victim was armed, and thus, whether [Marcus] was justified in shooting first in self-defense." *Slaughter v. State*, 278 Ga. 896 (608 SE2d 227) (2005) quoting *Ellis v. State*, 174 Ga. App. 535, 536 (2) (330 SE2d 764) (1985). Nor did the trial court err by refusing to charge on accident. There was no evidence that Marcus shot the victim accidentally; rather, he maintained in his statement to police that he fired in self-defense after he heard the victim make a threatening remark and he presented testimony at trial demonstrating that someone else shot the victim. See *Shorter v. State*, 270 Ga. 280 (2) (507 SE2d 757) (1998).

8. It was not error for the trial court to refuse to grant Marcus' motion for new trial on the ground that the admission of a detective's statement referencing the combined criminal record of Marcus and his friends impermissibly placed his character in evidence. See OCGA § 24-9-20. Marcus failed to raise character as a basis of objection at trial and therefore, he is precluded from review of this

issue on appeal. See *Burgeson v. State*, 267 Ga. 102 (4) (475 SE2d 580) (1996).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 18, 2009.

*Kristopher Shepherd, Ken Stula*, for appellant (case no. S09A0557).

*McArthur, McArthur & Overend, John J. McArthur*, for appellant (case no. S09A0558).

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.