## S09A0889. NELMS v. THE STATE.
## S09A0890. LINDSEY v. THE STATE.
### (681 SE2d 141)

THOMPSON, Justice.

Willie George Nelms and Joel Gilbert Lindsey were jointly indicted, tried, and convicted of malice murder and concealing the death of another in connection with the stabbing death of Errin Michelle Hattaway.[1] In these consolidated appeals, both defendants claim that the trial court erred in failing to give requested jury instructions on voluntary manslaughter and mutual combat and in denying a motion for mistrial based on prejudicial publicity; Lindsey also asserts that the court erred in denying his motion to sever his trial from that of his co-defendant. Finding no error, we affirm.

The victim was the girlfriend of appellant Lindsey. The two were friends of appellant Nelms and his wife, Beverly Barber-Nelms ("Barber-Nelms"). Barber-Nelms, who pled guilty to voluntary manslaughter and concealing a death, waived the marital privilege, and testified for the State at trial.

Viewed in a light most favorable to the verdict, the evidence established that the victim threatened to alert DFCS and the police to drug use on the part of Nelms, Barber-Nelms, and Lindsey. When Barber-Nelms complained to Lindsey about these threats, he replied that he would "get rid of" the victim. A few days later, both couples embarked on a road trip in a car rented by Nelms. In order to get the victim to go along, Lindsey concocted a story that he was driving out of town to check into a drug rehabilitation program. After several days of driving and consuming quantities of alcohol and illegal drugs, the two couples returned to the area of the victim's home in Lowndes County. Lindsey told the victim that he had a surprise for her and they both walked away from the car toward a cemetery. Barber-

---

[1] The crimes were committed on April 9, 2004. An indictment was returned on May 28, 2004, charging Nelms and Lindsey with malice murder and concealing the death of another. Trial commenced on February 5, 2007 and on February 7, 2007, a jury found both defendants guilty as charged. On the same day, both defendants were sentenced to life imprisonment for malice murder plus ten consecutive years for concealing a death. Nelms filed a motion for new trial on March 2, 2007, which he amended on August 8, 2008. Lindsey filed a motion for new trial on March 1, 2007, which he amended on October 6, 2008. The motions for new trial as amended were denied on December 1, 2008. Both defendants filed notices of appeal on December 12, 2008. Their appeals were docketed in this Court on December 17, 2008. Oral argument was heard on May 18, 2009.

Nelms knew "something was going to happen" because Lindsey and the victim had been arguing. Nelms and Barber-Nelms next heard the victim screaming for help. When they got to the cemetery, they saw Lindsey on his back on the ground and the victim on her back on top of him. Lindsey had stabbed her in the larynx and the two were struggling over a knife. Nelms got control of the knife and then pulled the victim up by her hair and plunged the knife into her throat, stabbing her repeatedly. Lindsey kicked the victim in the head to determine if she was dead; he and Nelms then dragged the body into the woods and covered it with leaves. Lindsey threw the knife and the victim's cell phone into a pond and the three concocted a story that the victim had run off with a truck driver. Several days later, Barber-Nelms turned herself into the police and led them to the body. She also directed the police to a pond where they were able to retrieve the cell phone but could not locate the knife.

Forensic evidence established the cause of death as slash wounds to the neck; the victim also suffered defensive wounds to her hands.

1. Both defendants claim that the evidence was insufficient to sustain their convictions because it consisted of the uncorroborated testimony of accomplice Barber-Nelms. " 'Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict.' " *Williams v. State*, 280 Ga. 584, 586 (1) (630 SE2d 370) (2006). Barber-Nelms' testimony was corroborated by evidence that she led police to the location of the body and the pond from which the cell phone was retrieved. In addition, the State produced receipts for vodka and beer purchased during the trip and consumed by the defendants. Also, a witness who had formerly employed Lindsey and Nelms testified that after the victim's disappearance, Lindsey told him she had run off with a truck driver, thus corroborating the coverup story.

We further reject Lindsey's argument that the evidence against him established only his "mere presence" at the scene when Nelms committed the physical act of stabbing the victim.

> Although mere presence at the scene of the crime is insufficient grounds for a conviction, a person can be guilty as a party to the crime if they intentionally aid, abet, encourage, facilitate, assist, or are otherwise concerned in the commission of the acts that constitute the crime.

*Metz v. State*, 284 Ga. 614, 615 (1) (669 SE2d 121) (2008). The evidence established that Lindsey was an active participant in the crimes in that he lured the victim into the cemetery and struggled with her over the knife. When it became apparent that he was unable

720

to overcome her, Nelms assisted him by plunging the knife into her throat. Both defendants dragged the body a distance from the murder scene, covered it with leaves, and then falsified the facts. See *Mitchell v. State*, 274 Ga. 768 (1) (560 SE2d 8) (2002) (evidence of removal of body from the scene and hindering discovery supported conviction for concealing the death). It follows that Lindsey's mere presence argument is wholly without merit.

Construed most strongly in support of the verdicts, the evidence was sufficient for a rational trier of fact to find both defendants guilty beyond a reasonable doubt of malice murder and concealing the death of another. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lindsey submits that the trial court erred in denying his pretrial motion to grant severance of defendants and his subsequent motion for mistrial based on an alleged violation of his Sixth Amendment right of confrontation under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

> (a) "It is incumbent upon the defendant who seeks a severance to show clearly that [the defendant] will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." [Cit.] Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses.

*Daniel v. State*, 285 Ga. 406, 407-408 (677 SE2d 120) (2009). After a pretrial hearing, the court applied the foregoing standard and exercised its discretion in denying the severance, subject to renewal at trial. As the evidence at trial created no confusion as to the evidence or law, antagonistic defenses were not asserted, and there was no improper spillover against either defendant, we find no abuse of discretion in denying the motion to sever.

(b) At trial, the motion was renewed by Lindsey on *Bruton* grounds, and was again denied.

After his arrest, Nelms gave two oral statements to the police; each statement was preceded by *Miranda* warnings and a written waiver. At trial Nelms invoked his right to remain silent. Over Lindsey's *Bruton* objection, the police officers who had questioned Nelms were permitted to testify to the contents of the two state-

ments.[2] During his initial questioning, Nelms was asked whether he had seen the victim; he replied that he had not seen her in some time and that he heard she had gone off with a truck driver. Nelms also admitted having gone to the cemetery but he stated that when he drove away from there, the victim did not accompany him.[3] Nelms admitted that he kept several knives at his home, but he denied carrying any. In a subsequent interview, Nelms was asked if he had driven to Louisiana. The officer related Nelms' response: "He said they went almost to Louisiana, but he didn't think they actually got into Louisiana." The officer then related Nelms' response to an inquiry about the cemetery: "He told me he went to the cemetery" and "he helped cover the body."

> In *Bruton*, supra, the Court held that a defendant's Sixth Amendment right of confrontation is violated, despite cautionary instructions, when: (a) co-defendants are tried jointly; (b) one co-defendant's confession is used to implicate the other co-defendant in the crime; and (c) the co-defendant who made the implicating statement employs his Fifth Amendment right not to testify and thus does not take the stand to face cross-examination about the statement.

*Mason v. State*, 279 Ga. 636, 638, n. 3 (619 SE2d 621) (2005). *Bruton* excludes only the statement of a nontestifying co-defendant that standing alone directly inculpates the defendant. *Daniel*, supra at 408 (3) (b); *Thomas v. State*, 268 Ga. 135, 137 (6) (485 SE2d 783) (1997).

In neither statement did Nelms name or inculpate Lindsey. Lindsey asserts that the statement "*they* went almost to Louisiana," could be construed by the jury to refer to him especially in light of Barber-Nelms' testimony that the two couples had embarked on the road trip together. But this reference, standing alone, did not directly implicate Lindsey in the crimes, and the remainder of Nelms' remarks referred only to himself. Id. For similar reasons, the trial court did not err in denying Lindsey's motion for mistrial on *Bruton* grounds when, during closing argument, the prosecutor referred to Nelms' custodial statements. Id. It follows that the trial court did not abuse its discretion in denying the severance motion and the motion for mistrial on *Bruton* grounds. *Daniel*, supra at 408 (3) (b); *Thomas*, supra at 137 (6).

3. On the morning of closing argument, defense counsel moved

---

[2] No written statements were introduced in evidence.

[3] The officer witness did not specify the date or time of Nelms' visit to the cemetery.

for mistrial on the ground that the defendants were prejudiced by an article about the trial that appeared in a local newspaper that morning. After a hearing at which the reporter and an investigator for the prosecution were questioned, the court denied the motion. The court found that with the exception of a minor misstatement in the article concerning Barber-Nelms' sentence, the article contained information that had been adduced during trial and to which the jurors had been exposed. The court also noted that during the course of the trial, the jurors were repeatedly admonished to avoid any media coverage of the case. "It is presumed that jurors follow a trial court's instructions," *Young v. State*, 280 Ga. 65 (9) (623 SE2d 491) (2005); defendants have made no showing to the contrary.

Although on appeal defendants urge that the court erred in failing to poll the jurors about any possible exposure to the article, no such request was made at trial. See *Mason v. State*, 239 Ga. 538 (238 SE2d 79) (1977) (new trial not mandated where defendant failed to ask for corrective action regarding news report of his trial). In fact, counsel for both defendants acknowledged that they were satisfied with the court's inquiry, so long as their objections were continuing. "[T]he controlling issue is whether a mistrial was essential to the preservation of defendant's right to a fair trial." *Edwards v. State*, 200 Ga. App. 580, 582 (1) (408 SE2d 802) (1991). Under the circumstances, we find no abuse of the court's discretion in denying a mistrial. See *Smallwood v. State*, 166 Ga. App. 247 (3) (304 SE2d 95) (1983).

4. It is asserted that the trial court erred in failing to give requested jury instructions on voluntary manslaughter and mutual combat.

(a) "A voluntary manslaughter charge is warranted only if there is evidence that an accused acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." (Punctuation omitted.) *Nichols v. State*, 275 Ga. 246 (2) (563 SE2d 121) (2002). The evidence established that Lindsey threatened to get rid of the victim and then lured her into the woods for that purpose; Nelms approached the victim, pulled her away from Lindsey, and inflicted the fatal wounds. "[F]ighting prior to a homicide 'does not constitute the type of provocation that would warrant a charge of voluntary manslaughter.' [Cit.]" *Nichols*, supra at 246. While only slight evidence is necessary to entitle a defendant to a charge on voluntary manslaughter, *Webb v. State*, 284 Ga. 122 (4) (663 SE2d 690) (2008), there was no evidence here that the defendants acted with provocation sufficient to excite the passion necessary to support a charge on voluntary manslaughter.

(b) A charge on mutual combat "is warranted only when the

combatants are armed with deadly weapons and mutually agree to fight." *Hudson v. State*, 280 Ga. 123 (2) (623 SE2d 497) (2005). As in *Hudson*, there was no evidence that the victim was armed with a deadly weapon; therefore, a charge on mutual combat was not warranted by the evidence.

5. Nelms submits that the trial court abused its discretion in refusing to reopen the evidence for the purpose of allowing him to testify in his own defense. After the State rested its case, the court addressed both defendants and ascertained that they had sufficient time to discuss with their attorneys their decisions not to testify. The defense then presented its case, all parties rested, and the evidence was closed. The following morning, Nelms asked the court to reopen the evidence to allow him to testify. The State objected noting that all its witnesses had been excused from their subpoenas and the State would have no rebuttal testimony available if needed. The discharge of all the witnesses for one side after the case has been announced closed is good ground for refusing to reopen the case at the instance of the other party. *Bundrick v. State*, 125 Ga. 753 (3) (54 SE 683) (1906). And although offered the opportunity to further complete the record, no proffer was made as to what Nelms would have testified to. Thus, we are unable to determine how he was harmed by the ruling. See *Tweedell v. State*, 218 Ga. App. 518 (2) (462 SE2d 181) (1995). Looking at the totality of the circumstances, we find no abuse of the court's discretion in refusing to reopen the evidence. See *Carruth v. State*, 267 Ga. 221 (476 SE2d 739) (1996).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 29, 2009 —
RECONSIDERATION DENIED JULY 28, 2009.

*Terry & Peterman, Guyton O. Terry III*, for appellant (case no. S09A0889).

*Edwards & Edwards, H. B. Edwards III*, for appellant (case no. S09A0890).

*J. David Miller, District Attorney, Bradfield M. Shealy, Jessica W. Clark, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.