**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**January 14, 2014**

# In the Court of Appeals of Georgia

A13A2476. COLEMAN v. THE STATE.

BARNES, Presiding Judge.

Jemal David Coleman and a co-defendant were jointly tried for the robbery of a bank. The jury found Coleman guilty of the charged offense, and the trial court denied his motion for new trial. On appeal, Coleman challenges the sufficiency of the evidence. Coleman further contends that the trial court's charge to the jury on impeachment of a witness by a prior conviction amounted to an improper comment on the evidence; that the trial court erred in allowing the State to introduce into evidence the statement of his non-testifying co-defendant in violation of his Sixth Amendment right of confrontation; and that the trial court abused its discretion in denying his motion to sever his trial from that of his co-defendant. For the reasons discussed below, we affirm.

Construed in favor of the verdict, the evidence showed that on the morning of May 18, 2010, a man later identified by bank employees as Coleman entered the Bank

of North Georgia in Paulding County. He was wearing a dark hat, sunglasses, and a jacket that was "zipped all the way up to his neck." Coleman approached one of the tellers and placed a note on the counter in front of her that read, "Put money in the bag. Don't push any buttons." He then folded up the note and threw a black bag onto the counter. The teller placed over $5,000 in the bag, and Coleman left the bank with the money.

Unbeknownst to Coleman, when placing the money in the bag, the teller also included a "track pack." The track pack was a set of bills that had a portion cut out of them into which a Global Positioning System ("GPS") tracking device had been embedded. When the track pack was removed from the teller's cash drawer, it sounded an alarm to a 911 call center and began transmitting information about the location of the device.

After the teller removed the track pack from her drawer, the 911 call center began monitoring the movement of the device and relaying the information about the location of the signal to a police dispatcher. The signal led the police down Interstate 20, Six Flags Drive, and ultimately to an apartment complex in Fulton County, where they found an empty car with its headlights on and the engine still running. When a

police investigator with a handheld beacon for tracking the signal approached the car, the device emitted the strongest signal near the trunk.

Co-defendant Vernon Keith McDougald was standing nearby watching the police. When the investigator went over to the car with the handheld beacon, McDougald approached him, said that the car belonged to his mother, and asked what was going on. The investigator had another officer remove McDougald from the immediate vicinity of the car. The investigator then looked in the trunk of the car and saw the black bag containing the money and track pack. The serial numbers on the money matched the serial numbers of the money stolen from the bank. The police also performed a sweep of the apartment complex, where Coleman was discovered hiding on the floor of an apartment unit where he did not live or know the tenants.

The police arrested McDougald and Coleman for the robbery of the bank. A cell phone discovered on McDougald at the time of his arrest showed two phone calls between McDougald and Coleman earlier that morning approximately one hour before the robbery.

On the day of his arrest, McDougald consented to a police interview after being advised of his rights. In the recorded interview, McDougald admitted to the detectives that the car containing the stolen money belonged to his mother and that he had

3

driven the car on Interstate 20, on Six Flags Drive, and in the apartment complex on the morning of the robbery. McDougald also told the detectives that he knew Coleman because his girlfriend was Coleman's niece.

A detective later prepared photographic lineups that included a picture of Coleman for bank employees to review. The teller who had placed the money in the bag identified Coleman as the man who had given her the note and taken the money. Upon identifying Coleman as the bank robber, the teller told the detective that "she was 100 percent sure." A second teller who had observed the bank robbery also identified Coleman as the robber in a photographic lineup.

McDougald and Coleman subsequently were tried together for the robbery after the trial court denied Coleman's motion for a severance. The teller who had been approached by Coleman and who placed the money in the bag testified to the events as set out above and positively identified Coleman as the robber. She further testified that upon being approached by Coleman, her "breathing changed" and she was "very scared" because she was not sure if he had a gun. According to the teller, she thought she "would be hurt or one of [her] coworkers would be hurt" if she did not comply with Coleman's demands.

4

The second teller who had witnessed the bank robbery also testified and positively identified Coleman as the robber. The 911 call center worker who monitored the location of the track pack and the officers and detectives involved in the case testified as well. Additionally, the bank robbery had been captured on the bank's video-surveillance cameras, and the State introduced surveillance footage and still photographs taken from the footage.

Over objection from Coleman, the State also introduced into evidence and played for the jury three video clips from the recording of McDougald's police interview in which McDougald made the statements about the car and about Coleman that were previously discussed. The trial court later charged the jury that an out-of-court statement by one defendant could only be considered as evidence against that defendant.

McDougald elected not to testify. In contrast, Coleman took the stand and testified that McDougald had dated his wife's niece. Although he denied involvement in the bank robbery, Coleman testified that McDougald had picked him up in the car on the day of the robbery, that he ultimately had "jumped out of the car because there [were] cops all over the place" and he "was on parole," and that he had fled "inside an apartment of people [he didn't] know" before the police found him. Coleman

further testified that McDougald had called him on the morning of the robbery and that he had called McDougald back that same morning, and that both calls occurred approximately one hour before the robbery. Moreover, Coleman testified that he had previously pled guilty to robbery in New York, where he had committed eight or nine robberies over a span of about three months. According to Coleman, he had been incarcerated for 12 years, and he had been out of prison for less than a year when the bank robbery occurred in this case.

After hearing all of the evidence, the jury convicted Coleman of robbery and McDougald of the lesser-included offense of theft by taking. Coleman filed a motion for new trial, which the trial court denied. This appeal followed.

1. Coleman contends that there was insufficient evidence to convict him of the robbery of the bank. His contention is without merit.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). We do not weigh the evidence or assess the credibility of the witnesses. Id. Instead, we apply the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) and "determine only whether, after viewing the evidence in the light most

favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Sidner*, 304 Ga. App. at 374.

> OCGA § 16-8-40 (a) (2) provides that

> [a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another[.]

The indictment alleged that Coleman committed robbery in that, with the intent to commit theft, he took United States currency belonging to the Bank of North Georgia from the person or immediate presence of the teller "by intimidation, and by placing [the teller] in fear of immediate serious bodily injury to herself or another."

The teller's testimony, including her identification of Coleman as the robber and her description of being very scared, was sufficient, standing alone, to establish the essential elements of the offense of robbery beyond a reasonable doubt. See *Thomas v. State*, 322 Ga. App. 734, 736 (2) (a) (746 SE2d 216) (2013). See *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011) (eyewitness testimony was sufficient by itself to sustain conviction). And while Coleman testified that he did

7

not rob the bank,"it was the role of the jury, not this Court, to assess the credibility of the witnesses and decide whose testimony to accept or reject." *Muckle*, 307 Ga. App. at 638 (1) (a). Accordingly, based upon the evidence set forth above, Coleman's robbery conviction was authorized under the standard of *Jackson v. Virginia*, 443 U. S. at 319 (III) (B). See *Thomas*, 322 Ga. App. at 736 (2) (a).

2. Coleman also contends that the trial court's charge to the jury on impeachment of a witness by a prior conviction amounted to an improper comment on the evidence. We disagree.

The trial court charged the jury on several aspects of impeachment, including the following:

> To impeach a witness is to prove that the witness is unworthy of belief. A witness may be impeached by, (A), disproving the facts to which the witness testified; (B), *by proof that the Defendant Jemal Coleman has been convicted of the offense of Robbery in the First Degree in the State of New York*; or (C), by proof of contradictory statements previously made by a witness about matters relevant to the witness's testimony and to the case.

(Emphasis supplied.) Also as part of its charge on impeachment, the trial court informed the jurors that "[i]t is for you to determine whether or not a witness has been impeached and to determine the credibility of such witness and the weight the

8

witness's testimony shall receive in consideration of the case." Later in its charge, the trial court further stated that "by no ruling or comment that the court has made during the progress of this trial has the court intended to express any opinion whatsoever upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendants." Coleman did not object to the charge on impeachment during the charge conference or after the trial court completed its charge to the jury.

Coleman argues that by naming him and describing his prior conviction in its charge on impeachment of a witness by a prior conviction, the trial court "told the jury [that he] had, in fact, been convicted of the New York offense and it should be used as a basis for disbelieving him and inferring his guilty in the present case." As such, Coleman argues that the trial court's charge constituted an impermissible expression of opinion regarding what had been proven in the case and thus was reversible error under OCGA § 17-8-57.

"It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57. "Even if defense counsel fails to raise an objection, if the trial court violates this statutory provision, we are

9

required to order a new trial, and there can be no finding of harmless error." (Citations and punctuation omitted.) *Booker v. State*, 322 Ga. App. 257, 259 (1) (744 SE2d 429) (2013). See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010); *Sauerwein v. State*, 280 Ga. 438, 439 (2) (629 SE2d 235) (2006).

In this case, the trial court's charge on impeachment of a witness by a prior conviction was not an impermissible expression of opinion because the fact that Coleman had been convicted of Robbery in the First Degree in New York was undisputed and never contradicted by any evidence.

> It is true that OCGA § 17-8-57 is violated when the court's comment assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. Courts of this State have always recognized, however, that a statement by a trial court concerning a fact that is uncontested or is not in dispute does not constitute a violation of this statute.

(Citations and punctuation omitted.) *Rolland v. State*, 321 Ga. App. 661, 665 (1) (a) (742 SE2d 482) (2013). See *Sauerwein*, 280 Ga. at 439 (2). See also *Thomas v. State*, 27 Ga. App. 38, 40 (107 SE 418) (1921) (statute prohibiting expressions of opinion by trial court "refers to the expression or intimation of an opinion touching some fact at issue in the case, and not to something that is conceded by both parties") (citations

10

and punctuation omitted). Therefore, "when the evidence to establish a fact is undisputed, and the fact is admitted by the accused on his trial, it is not error for the judge to assume such fact in formulating appropriate instructions to the jury." *McCloud v. State*, 166 Ga. 436, 444 (143 SE 558) (1908).

Coleman expressly admitted during his testimony at trial that he had previously pled guilty to robbery in New York, where he had committed eight or nine robberies over a span of about three months. Later, during the charge conference, Coleman's counsel expressly stated that the defense did not object to a charge on impeachment by prior conviction and never disputed that "New York calls it Robbery in the First Degree." Under these circumstances, Coleman's prior conviction for Robbery in the First Degree in New York was undisputed, and thus the trial court's charge on impeachment was not an impermissible expression of opinion regarding what had been proven by the evidence. See *Branscomb v. State*, 272 Ga. App. 700, 701 (1) (613 SE2d 222) (2005) (trial court's questioning of defendant regarding his prior guilty plea did not constitute impermissible expression of opinion because "the trial judge's questioning of [the defendant] concerned facts that were not disputed by [the defendant].") Compare *Byrd v. State*, 307 Ga. App. 589, 592 (705 SE2d 690) (2011) (trial court's comment that venue had been proven constituted improper expression

11

of opinion, when "at the time the court made its comment[], the record shows that venue was still contested").

We likewise reject Coleman's argument that the trial court violated OCGA § 17-8-57 because the charge on impeachment of a witness by a prior conviction "express[ed] an unfavorable opinion of [his] credibility" and "essentially told the jury the only inference they could draw" was that he was guilty of the bank robbery in this case. It is well established that "jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citation and punctuation omitted.) *Hines v. State*, 320 Ga. App. 854, 865 (5) (b) (740 SE2d 786) (2013). Taken as a whole, the trial court's charge on impeachment did not require the jury to disbelieve Coleman's testimony based on proof of his prior New York conviction. Rather, the trial court charged jurors that Coleman "*may* be impeached" by his prior New York conviction and that it was for them to determine whether any given witness had been impeached, whether the witness was credible, and what weight to assign the witness's testimony. The trial court further charged jurors that none of its comments had been intended to express an opinion regarding the credibility of the witnesses or the guilty or innocence of the defendants. Thus, taking into account the jury charge as a whole, we discern no violation of OCGA § 17-8-57.

12

3. As previously noted, the trial court admitted into evidence the portions of the statement that co-defendant McDougald made to the police in which he stated that the car in which the stolen money was found belonged to his mother, that he had been driving the car on the day of the bank robbery, and that he knew Coleman because his girlfriend was Coleman's niece. The trial court thereafter charged the jurors that an out-of-court statement by one defendant could only be considered as evidence against that defendant. Because McDougald elected not to testify at trial, Coleman contends that the introduction of McDougald's out-of-court statement, which was redacted in part but still included the reference to Coleman, violated his Sixth Amendment right of confrontation under *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968). Again, we disagree.

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has the right to confront witnesses against him and to cross-examine them. Generally, when a jury is instructed that certain testimony or evidence may only be considered against a co-defendant, the jury is presumed to follow the court's instruction and the testimony or evidence is not considered to be "against" the defendant. In *Bruton*, however, the Supreme Court [of the United States] recognized a narrow exception to this principle, by holding that when a facially, powerfully incriminating statement of a non-testifying co-defendant is presented to the jury, the risk is so great the jury will ignore the limiting instruction

13

and consider the co-defendant's confession against the defendant that the general rule cannot be followed. The Court thus held that the introduction of such statements, even with a limiting instruction, violates the defendant's right of confrontation.

In contrast to cases involving powerfully incriminating statements of a co-defendant, the Supreme Court [has] stated that when a co-defendant's statement does not directly incriminate the defendant and the jury is required to draw inferences to connect the statement to the defendant, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence.

In accordance with the latter principle, [the Supreme Court of Georgia has] held that *Bruton* only excludes statements by a non-testifying co-defendant that directly inculpate the defendant, and that *Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face and only becomes incriminating when linked with other evidence introduced at trial.

(Punctuation and footnotes omitted.) *Moss v. State*, 275 Ga. 96, 98 (2) (561 SE2d 382) (2002). See *Richardson v. Marsh*, 481 U.S. 200, 206-208 (II) (107 SCt 1702, 95 LE2d 176) (1987); *Dulcio v. State*, 292 Ga. 645, 649 (2) (740 SE2d 574) (2013).

We conclude that the trial court did not err under *Bruton* by admitting portions of McDougald's statement to the police. The only reference in the police statement

14

to Coleman was when McDougald indicated that he knew Coleman because his girlfriend was Coleman's niece. But that reference, standing alone, did not directly inculpate Coleman; rather, it became incriminating only when linked with other evidence presented at trial. Because McDougald's statement was not "facially, powerfully incriminating" of Coleman, we presume that the jury followed the trial court's limiting instruction and only considered the statement as evidence against McDougald. (Citation and punctuation omitted.) *Moss*, 275 Ga. at 98 (2). It follows that McDougald's out-of-court statement was not "against" Coleman and therefore did not violate the Confrontation Clause. See id. See also *Daniel v. State*, 285 Ga. 406, 408 (3) (b) (677 SE2d 120) (2009); *Thomas v. State*, 268 Ga. 135, 137-138 (6) (485 SE2d 783) (1997).

4. Lastly, Coleman contends that the trial court erred in denying his motion to sever his trial from that of McDougald. We are unpersuaded.

Whether to grant a severance is a matter within the trial court's discretion. *Heard v. State*, 274 Ga. 196, 199 (5) (552 SE2d 818) (2001).

> When exercising its discretion, the trial court should consider factors such as: 1. Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defendant will be

15

considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights?

(Footnote omitted.) *Ham v. State*, 303 Ga. App. 232, 241 (5) (692 SE2d 828) (2010). See *Daniel v. State*, 285 Ga. 406, 407-408 (3) (677 SE2d 120) (2009). "The burden is on the moving party to make a clear showing of prejudice and a denial of due process in the absence of severance." *Ward v. State*, 288 Ga. 641, 644 (3) (706 SE2d 430) (2011).

Coleman has failed to carry his burden in this case. He essentially challenges the trial court's determination on the second factor, i.e., "danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court." (Footnote omitted.) *Ham*, 303 Ga. App. at 241 (5). In this regard, Coleman argues that McDougald's out-of-court statement to police would not have been admissible if he had been tried separately, which would have eliminated the risk of the jury improperly considering the statement as evidence against him. However, as noted supra in Division 3, the introduction of McDougald's statement in the joint trial did not constitute a *Bruton* violation. Thus, we presume that the jury followed the trial court's limiting instruction and only considered the

16

statement as evidence against McDougald. Because McDougald's statement could be introduced in the joint trial without posing a *Bruton* problem, the trial court did not abuse its discretion in denying Coleman's motion to sever. See *Ham*, 303 Ga. App. at 243 (5) (a).

*Judgment affirmed. Miller and Ray, JJ., concur.*